# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff/Respondent, | |
| v. | No. 15-20004-01-JAR |
| MATTHEW BARNES, | |
| Defendant/Petitioner. | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Matthew Barnes' *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 34). The Government has responded by moving for dismissal of the motion as untimely because it was filed outside the applicable statute of limitations,[1] and Petitioner has replied.[2] After a careful review of the record and arguments presented, the Court grants the Government's motion.

## I.  Factual and Procedural Background

On January 30, 2015, an Information was filed charging Barnes with one count of Possession of Child Pornography.[3] During his initial appearance on April 14, 2015, Barnes waived his right to be charged via indictment.[4]

---

[1] Doc. 36.

[2] Doc. 37.

[3] Doc. 1.

[4] Docs. 7, 8.

1

On June 1, 2015, Barnes pled guilty to the sole count of the information.[5] The Plea Agreement included a factual basis that established Barnes committed the crime to which he was pleading guilty:

> On March 21, 2012, a detective with the Overland Park, Kansas Police Department, who is assigned to the FBI Cyber Crimes Task Force, used an Internet-connected computer with a publicly-available peer-to-peer file sharing software to search for *other computers sharing images of child pornography*. Through a special program used by undercover FBI personnel, the detective's computer *located a computer sharing images of child pornography, which then distributed six images of child pornography and child erotica*. The IP address of this other computer resolved to Surewest Kansas, which had assigned the address to the Drug Enforcement Administration's offices in Overland Park, Kansas.
>
> The detective and two FBI agents went to the DEA office that afternoon and through assistance with DEA personnel were able to identify the *laptop assigned the IP address distributing child pornography*, which **w**as still operating and had a thumb drive inserted.
>
> . . .
>
> A forensic examiner imaged the thumb drive while it was still plugged into the HIDTA computer and also imaged that computer. RCFL personnel reviewed the imaged thumb drive and computer and located images of child pornography that were transmitted to the National Center for Missing and Exploited Children. NCMEC identified 19 images of child pornography from nine different known series of child pornography from the material on the defendant's thumb drive. Some of these images included sexually explicit conduct involving prepubescent minors.[6]

The Plea Agreement also addressed the application of specific provisions of the United States Sentencing Guidelines:

> The defendant agrees that the base offense level under U.S.S.G. § 2G2.2(a)(1) would be 18. The defendant agrees the offense level would be increased two levels under U.S.S.G. § 2G2.2(b)(2) because the child pornography involved prepubescent minors. *The defendant also agrees the offense level would be increased five levels under U.S.S.G. § 2G2.2(b)(3)(B) because he was distributing child pornography in exchange for something of value*. The defendant further agrees the offense level would be increased two levels under U.S.S.G. § 2G2.2(b)(6) because the offense involved the use of a computer. The defendant

---

[5]Docs. 15, 16.

[6]Doc. 16 at 2–3 (emphasis added).

further agrees the offense level would be increased two levels under U.S.S.G. § 2G2.2(b)(7)(A) because the offense involved more than ten images.[7]

A revised Presentence Investigation Report ("PSR") was prepared by the United States Probation Office and filed on August 7, 2015.[8] The PSR calculated Barnes' offense level as set out in the Plea Agreement, with a three-level reduction for acceptance of responsibility, resulting in a Total Offense Level of 26.[9] With respect to the five-level adjustment, the PSR stated,

> The defendant used a file sharing program to download and share images with others. In turn the defendant downloaded images made available by others who accessed the same file sharing network for the purpose of distributing and receipt of child pornography. The defendant was involved in Distribution of Child Pornography for the receipt, or expectation of receipt of a thing of value (Child Pornography images/videos), but not for pecuniary gain, increase by 5 levels. USSG 2G2.2(b)(3)(B).[10]

There were no objections to the PSR. Barnes' Criminal History was Category I, which resulted in an advisory Guideline range of 63 to 78 months.

The Court sentenced Barnes to 63 months' imprisonment. The judgment was filed and entered on August 17, 2015.[11] Barnes did not file a direct appeal.

## II. Discussion

### A. Timeliness

A defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which establishes a one-year limitations period for federal prisoners seeking habeas relief.[12] This statute provides that a defendant has one year from the date his

---

[7] *Id.* at 4 (emphasis added).

[8] Doc. 24.

[9] *Id.* ¶¶ 20–32.

[10] *Id.* ¶ 22.

[11] Doc. 27.

[12] *See* 28 U.S.C. § 2255(f).

judgment of conviction becomes final to file his § 2255 motion.[13] "In the context of the one-year limitation period for filing a § 2255 motion, a criminal conviction becomes final when the Supreme Court affirms it on direct review, denies certiorari, or (in the absence of a certiorari petition) the time for filing a certiorari petition expires."[14] Because no direct appeal was taken, the motion must have been filed within one year of Barnes' deadline to appeal this Court's judgment. The Federal Rules of Appellate Procedure make clear that Barnes had fourteen days from the Court's judgment in which to file an appeal; applying this to the statute of limitations governing § 2255, Barnes had one year and fourteen days to file the instant motion.[15] In short, Barnes' § 2255 motion could only be considered timely if filed on or before August 31, 2016. Barnes filed his § 2255 motion on April 20, 2018, nearly one year and eight months after the one-year limitations period ran.

In response to the Government's motion to dismiss, Barnes concedes that his motion was filed outside the one-year deadline, but argues he is entitled to equitable tolling of the statute of limitations. "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."[16] In the habeas action context, equitable tolling has been limited to "rare and exceptional circumstances."[17] The Tenth Circuit has explained that equitable tolling "would be appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct—or

---

[13] 28 U.S.C. § 2255(f)(1).

[14] *United States v. Prows*, 448 F.3d 1223, 1227 (10th Cir. 2006).

[15] Fed. R. App. P. 4(b).

[16] *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see Marsh v. Soares*, 233 F.3d 1217, 1220 (10th Cir. 2000), *cert denied*, 531 U.S. 1194 (2001) (explaining equitable tolling "is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances.").

[17] *Gibson v. Klinger*, 232 F.3d 799, 800 (10th Cir. 2000).

other uncontrollable circumstance—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period."[18]

An attorney's misconduct or "egregious behavior" may also "create an extraordinary circumstance that warrants equitable tolling."[19] But, "[s]imple excusable neglect is not sufficient" to meet this standard.[20] "An inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence," and to satisfy this burden the petitioner must "allege with specificity the steps he took to diligently pursue his federal claims."[21]

Effective November 1, 2016, the Sentencing Commission amended § 2G2.2(b)(3)(B) to reject the view that a defendant's knowing use of file-sharing software generally satisfies the requirements for a five-level enhancement. Amendment 801 to the Guidelines Manual states that the enhancement applies if "the defendant distributed in exchange for any valuable consideration."[22] This means that the increase applies where a defendant "agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material, preferential access to child pornographic material, or access to a child."[23]

---

[18]*Id.* (internal citations omitted); *Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003).

[19]*Holland v. Florida*, 560 U.S. 631, 651 (2010).

[20]*Gibson*, 232 F.3d at 808; *see also Holland*, 560 U.S. at 651–52 ("We have previously held that a 'garden variety claim of excusable neglect' . . . does not warrant equitable tolling." (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

[21]*Yang v. Archuleta*, 525 F.3d 925, 928, 930 (10th Cir. 2008) (brackets and internal quotation marks omitted).

[22]U.S.S.G. § 2G2.2(b)(3)(B) (2016); U.S.S.G. App. C., amend. 801.

[23]*Id.*, comment (n.1).

Barnes argues that he is entitled to equitable tolling of the statute of limitations because he began taking steps to challenge his sentence in June of 2016, but was prevented from doing so due to extraordinary circumstances beyond his control. Specifically, Barnes contends that he learned about Amendment 801 in June 2016, at which time his family attempted to contact his lawyer in his underlying criminal proceedings, John O'Connor. Barnes states that attempts to contact O'Connor via phone, text, and email were made from June through October 2016 went without reply. Barnes' family contacted the Kansas State Public Defender and Kansas Legal Services, but the organizations were not able or willing to take his case and directed his family to contact his lawyer of record or to hire new counsel.

In November 2016, Barnes hired Carl Cornwall to assist in this matter. On June 17, 2017, Cornwell told Barnes he was in communication with the prosecutor and waiting on information. Barnes states that on January 22, 2018, Cornwall apologized for how long everything was taking, but to not give up on him. Barnes states that on April 4, 2018, Cornwall sent him a form § 2255 petition to complete and file and have an attorney appointed, and wished him luck. Barnes filed the instant motion on April 20, 2018.

Even accepting his allegations as true, Barnes fails to allege any facts that demonstrate he has diligently pursued his claim. Although he states he learned about Amendment 801 in June 2016, he has not asserted that he undertook any action to pursue his instant § 2255 claims during the year-long limitations period. Although his family contacted O'Connor, their messages went unreturned for over four months. Barnes does not assert that he took other steps or worked on drafting his petition during this time, but argues that he is unfamiliar with the legal process and knew nothing of his rights or deadlines under § 2255. The law is clear, however, that complaints about unfamiliarity with the legal process have been found to provide no basis for equitable

tolling.²⁴  Ignorance of the law generally and of the AEDPA time limit in particular will not excuse untimely filing, even for an incarcerated *pro se* prisoner.²⁵  "Simple excusable neglect is not sufficient."²⁶

Nor does Barnes allege any facts that some extraordinary circumstance stood in his way of filing the instant motion.  The Tenth Circuit recognizes that "sufficiently egregious misconduct on the part of a habeas petitioner's counsel may justify equitable tolling of the AEDPA limitations period."²⁷  In *Fleming v. Evans*, the petitioner hired counsel to represent him in state post-conviction proceedings.²⁸  The petitioner subsequently made a number of inquiries as to the status of his petition and was told each time that it was being prepared and would soon be filed.²⁹  The petition was never filed, however, and the petitioner ultimately drafted a petition with the help of a prison clerk.³⁰  The petitioner submitted it to counsel for review and filing in state court, but counsel did not file until after the AEDPA deadline had passed.³¹  On these facts, the court concluded that the petitioner was at least entitled to an evidentiary hearing to determine whether equitable tolling should apply.³²

By contrast, although Barnes contends that counsel O'Connor was unresponsive to his family's inquiries from June to October 2016, he does not assert that counsel's representation in

---

²⁴*See Wallace v. Kato*, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely comm.on state of affairs").

²⁵*Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194 (2001)*; Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000).

²⁶*Id.*

²⁷*Fleming v. Evans*, 481 F.3d 1249, 1251 (10th Cir. 2007).

²⁸*Id.*

²⁹*Id.*

³⁰*Id*.

³¹*Id.*

³²*Id.* at 1256–57.

7

the underlying proceedings extended to assisting him with the filing of a § 2255 motion. Other than ignorance of the law, Barnes does not explain why this prevented him from asserting his present claim of ineffective assistance of counsel within the limitations period. Moreover, Barnes did not retain counsel Cornwall until November 2016, after the limitations period had run. This is an insufficient basis for finding such extraordinary circumstances as to justify tolling of the limitations period.[33] Accordingly, the Court finds that Barnes' request for equitable tolling is without merit and his motion is untimely.

### B. Merits

Even if Barnes was entitled to equitable tolling, however, his § 2255 motion is without merit. The Sixth Amendment guarantees that "[i]n all criminal prosecution, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[34] A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[35] First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[36] Second, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[37] A defendant is entitled to the effective assistance of counsel during plea negotiations.[38] "The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness."[39] "To show prejudice in the guilty plea context, the

---

[33]*See United States v. Halcrombe*, 700 F. App'x 810, 815–16 (10th Cir. 2017) (collecting cases).

[34]U.S. Const. amend. VI; *see Kansas v. Ventris*, 556 U.S. 586 (2009).

[35]466 U.S. 668 (1984).

[36]*Id.* at 688.

[37]*Id.* at 687.

[38]*Lafler v. Cooper,* 566 U.S. 156, 162–63 (2012).

[39]*Id.* at 163 (internal quotation marks omitted).

defendant must establish that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial.'"[40]

In all events, a defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[41] "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[42]

Because Amendment 801 went into effect over one year after Barnes entered his Plea Agreement and was sentenced, he cannot show that O'Connor's failure to object to the five-level enhancement was deficient.[43] Barnes was sentenced before the amendment became effective, so this Court properly applied the former Guideline and this Court's then-existing precedent to determine whether the five-level adjustment was warranted.[44] The Commission did not apply the amendment retroactively.[45] Moreover, Barnes has not alleged that, but for O'Connor's purported error, he would not have pled guilty and would have proceeded to trial. It does not appear that Amendment 801 would benefit Barnes if he were to be sentenced under the versions of the Guidelines effective November 1, 2016, as he used the file-sharing software to search for, retrieve, and share child pornography. As the PSR states, Barnes used the file-sharing program

---

[40]*Heard v. Addison*, 728 F.3d 1170, 1176 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)).

[41]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[42]*Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

[43]*United States v. Harms,* 371 F.3d 1208, 1212 (10th Cir. 2004) ("The Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant.").

[44]U.S.S.G. § 1B1.11(a); *United States v. Geiner*, 498 F.3d 1104, 1111 (10th Cir. 2007).

[45]*See* U.S.S.G. § 1B1.10(d) (2016); *United States v. Aman*, 697 F. App'x 939, 940 (10th Cir. 2017).

to download and share images with others and, in turn, downloaded images made available by others on the same file-sharing network for the purpose of distributing and receipt of child pornography.[46] The detective and FBI agents were able to download child pornography from Barnes' IP address and Barnes conceded in his Plea Agreement that he was subject to a two-level increase for distributing child pornography that involved prepubescent minors.[47] Because Barnes cannot demonstrate either *Strickland* prong, his claim of ineffective assistance of counsel fails.

### III. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.[48] A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.[49] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[50] For the reasons stated above, the Court finds Barnes has not satisfied this standard and, therefore, denies a certificate of appealability as to its ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Matthew Barnes' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 34) is **dismissed** as untimely; Barnes is also denied a certificate of appealability.

---

[46]Doc. 24, ¶ 22.

[47]Doc. 16, ¶¶ 2, 3, 4

[48]The denial of a § 2255 motion is not appealable unless a circuit justice or a district judge issues a certificate of appealability. Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[49]28 U.S.C. § 2253(c)(2).

[50]*Saiz v. Ortiz,* 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)).

**IT IS SO ORDERED.**

Dated: July 27, 2018

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              CHIEF UNITED STATES DISTRICT JUDGE